IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| IN RE PAATALO, | 9:26–mc–01–DWM<br><br>ORDER |

This proceeding arises out of a decade-long mortgage dispute in California. In the most recent lawsuit associated with that dispute, Plaintiffs Gary and Emma Koeppel sued Defendants Steven Wilker and Tonkon Torp, LLP (together, "Defendants") for legal malpractice in California state court. That action was removed by Defendants to the Northern District of California in 2024. *Koeppel v. Wilker*, 5:24-cv-06457, Doc. 1 (N.D. Cal. Sept. 13, 2024). A more complete history of that litigation, how it relates to the present case, and this matter's posture is outlined in this Court's February 17, 2026 and April 20, 2026 Orders. (Docs. 14, 33). The only remaining issue before the Court is whether nonparty witness William J. Paatalo should be found in contempt under Rule 45(g) of the Federal Rules of Civil Procedure. A hearing was held on this issue on April 20, 2026. For the reasons discussed at that hearing and those provided below, Paatalo is found in contempt and must pay Defendants $14,701.65.

1

## I.    Contempt Finding under Rule 45(g)

Under Rule 45(g) of the Federal Rules of Civil Procedure, a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (internal citations omitted). Consistently, a nonparty may avoid contempt by showing an "adequate excuse" for noncompliance. Fed. R. Civ. P. 45(g). Because "adequate excuse" is not defined in the Rule, *see* Fed. R. Civ. P. 45 advisory committee's note to 1991 Amendment, courts have approached this inquiry as being "factually dependent." *HI.Q Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *5 (S.D. Cal. Nov. 29, 2022). At one end of the spectrum, the "inability to comply with an order is ordinarily a complete defense to a charge of contempt." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018) (internal quotation marks and alteration omitted). But even if compliance is possible, "[a] person should not be held in contempt if her 'action appears to be based on a good faith and reasonable interpretation of the court's order.'" *Dallas Buyers Club, LLC v. Doe-71.238.61.141*, 2016 WL 6208268, at *2 (D. Or. Oct. 21, 2016) (cleaned up) (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). Nevertheless, "[a] court may

2

consider a nonparty's history of non-compliance and the extent to which the witness failed to comply during the pendency of the motion for contempt." *Id.* (internal quotation marks omitted).

## A.    Violation of a Court Order

Defendants have shown by clear and convincing evidence that Paatalo has "violated a specific and definite order of the court." *Stone*, 968 F.2d at 856 n.9. Paatalo was subject to five specific disclosure directives: (1) the original document subpoena, (Doc. 3-5); (2) the Court's February 17, 2026 Order, (Doc. 14); (3) the Court's March, 25, 2026 Order, (Doc. 19); (4) the Court's April 14, 2026 Order, (Doc. 29); and (5) the Court's April 20, 2026 Order, (Doc. 33).  Paatalo explicitly defied most of these directives.  While Paatalo's noncompliance with certain directives falls just short of the "specific and definite order" standard, they reinforce his unreasonable and obstructive approach to his disclosure obligations in the case, showcasing a pervasive "history of noncompliance." *Dallas Buyers Club, LLC*, 2016 WL 6208268, at *2.

### 1.    Original Document Subpoena

There is no question that Paatalo failed to either comply with or timely object to the document subpoena that was served on October 23, 2025.  However, whether he can be held in contempt for this noncompliance is not as simple as it may seem.  The plain language of Rule 45(g) explicitly permits a contempt ruling solely on the failure to "*obey the subpoena* or an order related to it." (emphasis

3

added).  Yet district courts have consistently refused to impose contempt orders "until a person . . . has failed to comply with an order compelling document production." *HI.Q Inc.*, 2022 WL 17345784, at *5; *see also Poturich v. Allstate Ins. Co.*, 2015 WL 12766048, at *2–3 (C.D. Cal. Aug. 11, 2015); Fed. R. Civ. P. 45 advisory committee's note to 2013 Amendment ("[I]t would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena . . . ."). Such circumspection appears to be borne out of the fact that if a nonparty timely objects to a subpoena under Rule 45(d)(2)(B), compliance is not required until the serving party obtains an order compelling compliance. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) ("Having objected, [the nonparty] was not obligated to produce the subpoenaed documents, or even to search for them, until [the serving party] obtained an order directing compliance"). But because there was no such objection here, timely or otherwise, Paatalo is subject to contempt for failing to comply with, or otherwise object to, the subpoena in the first instance. Thus, Paatalo's "history of noncompliance" goes back the very start. *Dallas Buyers Club, LLC*, 2016 WL 6208268, at *2.

### 2.    The February 17, 2026 Order

The Court's February 17, 2026 Order established two facts and explicitly ordered one action. (*See* Doc. 14.) That Order established that: (1) Paatalo waived any objection, including privilege, to the document subpoena and (2) Paatalo waived any challenge to being deposed. (*Id.*) Then the Order explicitly directed

4

Paatalo to sit for a deposition, though it stopped short of compelling his compliance with the document subpoena. (*Id.*) Rather, the Order cautioned Paatalo that "he c[ould] either respond to the document subpoena[] as required by the Federal Rules of Civil Procedure or wait for Defendants to file a motion to compel, opening [him] to the likelihood that he w[ould] shoulder the fees and costs associated with that motion." (*Id.* at 7.) Paatalo did not heed that warning.

On February 23, 2026, Paatalo sent his "non-party response and objections" to Defendants, objecting to the document subpoena on numerous grounds, including, *inter alia*, privilege, undue burden, trade secrets, and relevance. (Doc. 17-2.) In so doing, Paatalo unreasonably ignored this Court's explicit finding that he had waived any grounds to object to that subpoena. Contrary to Paatalo's apparent interpretation, that Order did not reopen the door for Paatalo to object under Rule 45(d)(2)(B).

Nevertheless, the February 17, 2026 order fell short of compelling Paatalo's compliance with the document subpoena. Because such compliance was "left undecided," it could be argued that Paatalo's "noncooperation could not be deemed a contempt under Rule 45([g])." *Pennwalt*, 708 F.2d at 494 (construing a motion to quash as a written objection and refusing to hold a nonparty in contempt because, despite denying that motion, the serving party failed to obtain an order directing compliance with its subpoena). However, such a conclusion would brush aside Paatalo's blatant disregard for the express language of the Court's February

5

17 Order and ignore this strong example of Paatalo's "history of noncompliance."

*Dallas Buyers Club, LLC*, 2016 WL 6208268, at *2.  Paatalo's response to this

Order is therefore relevant to the contempt inquiry.

### 3.    The March 25, 2026 Order

In light of Paatalo's untimely objection to the document subpoena, (*see* Doc.

17-2), Defendants filed a motion to compel on March 10, 2026, (Doc. 15).  In

responding to that Order, Paatalo argued that because no production had been

affirmatively ordered, "[t]here has been no violation of any court order." (Doc. 18

at 4.)  While that may be true, Paatalo further incorrectly stated that "no court has

adjudicated the validity of Mr. Paatalo's privilege, privacy, or jurisdictional

objections." (*Id.*)  In so arguing, Paatalo unreasonably ignored the explicit waiver

language contained in the February 17 Order.  Consistently, on March 25, 2026,

this Court granted Defendants' motion to compel, explaining:

> The language of the February 17 Order is unequivocal: "Paatalo has
> waived any objection to Defendants' document subpoena." (Doc. 14 at
> 7.)  By failing to properly and timely respond to Defendants' subpoena
> in the first instance, Paatalo waived all the protections and limitations
> afforded by the Federal Rules of Civil Procedure, including assertions
> of privilege.  Once Paatalo's motion to quash was denied, disclosure
> was therefore required.  Paatalo cannot withhold responsive documents
> on any ground but rather must promptly disclose all responsive,
> withheld documents and/or correspondence.  And he must do so within
> ten (10) days of the date of this Order.

(Doc. 19 at 3.)  In regard to potential contempt sanctions, the Court further stated:

> Paatalo was explicitly told that he had waived all objections to
> Defendants' document subpoena, including privilege. (*See* Doc. 14 at

6

7.) He was further warned that if he forced Defendants to pursue a motion to compel to enforce that subpoena, it was likely "that he w[ould] shoulder the fees and costs associated with that motion." (*Id.*) Despite that explicit ruling and warning, Paatalo persisted in raising waived objections. (*See* Doc. 17-2.) He must now show cause why he should not be held [in] contempt and sanctioned for failing to comply with the subpoena, (*see* Doc. 3-5), as interpreted by an order of this Court, (*see* Doc. 14).

(*Id.* at 4.)

But instead of disclosing the over 6,000 emails Paatalo identified as responsive in his untimely objection, (Doc. 17-2 at 2), Paatalo filed a "Supplemental Notice of Compliance Clarifying the Scope of Review," stating that only approximately 1,000 emails were actually responsive to the subpoena, including 515 that had been disclosed and approximately 433 that were potentially subject to privilege, (Doc. 24). At that point, this Court had given Paatalo permission to withhold the potentially privileged documents pending further review of putative intervenor Gary Koeppel's privilege log. (*See* Doc. 21.) However, there was no basis in the record to support Paatalo's decision to withhold over 5,000 documents he had recharacterized as "nonresponsive." Additionally, there was no evidence in the record that Paatalo produced other documents subject to the subpoena, such as the declarations requested in Request No. 14, (*see* Doc. 3-5 at 5). Thus, as of April 8, 2026, the date of mandatory disclosure of all previously identified documents that were not subject to Koeppel's privilege objection, (Doc. 21), Paatalo failed to fully comply with the March 25, 2026 Order.

### 4.    April 14, 2026 Order

After the Court denied Koeppel's request to intervene as untimely, it ordered Paatalo to:

> produce to Defendants all the documents originally identified as responsive in his February 23, 2026 "Non-Party Response and Objection[]," (Doc. 17-2), on or before 5:00 p.m. on April 16, 2026 (no less than 6,143 emails). That disclosure includes those documents included in Koeppel's privilege log. By that same date, Paatalo must also disclose any other documents, correspondence, and declarations that are responsive to the subpoena, including but not limited to the declarations identified in Request No. 14, (*see* Doc. 3-5). Paatalo is already facing a contempt proceeding. *See* Fed. R. Civ. P. 45(g) (*see* Doc. 19). Continued noncompliance and obstructive conduct may result in additional contempt sanctions.

(Doc. 29 at 4.) In contravention of this explicit directive, Paatalo reaffirmed both at the hearing and in a filing he submitted the same day that he had not produced the vast majority of the "6,143 emails" originally identified on the ground that:

> [t]he remaining communications within the Gmail search results were determined to be non-responsive, including personal communications, unrelated business communications, and other materials outside the scope of the subpoena. Those non-responsive communications were not produced because they do not fall within the scope of permissible discovery under the Federal Rules of [C]ivil Procedure.

(Doc. 31 at 3.)

### 5.    April 20, 2026 Order

Paatalo's attempt to recharacterize most of the emails within his possession as "non-responsive" was immediately and explicitly rejected. (Doc. 33.) Paatalo was ordered to:

by 5:00 p.m. on April 22, 2026 . . . disclose to Defendants all 6,143 emails identified in his "Non-Party Response and Objection[]," (Doc. 17-2), without regard to his interpretation of their "responsiveness." By that same date and time, he must also provide Defendants with a notice that accounts for all 6,143 emails. For example, if ten of those "6,143 emails" are in a single email thread, that notice must explicitly identify that thread and the number of emails present therein. Put simply, Paatalo must disclose and account for all 6,143 emails identified in his February 23, 2026 disclosure. (*See* Doc. 17-2.)

(*Id.* at 4–5.) This Court further ordered that if "Paatalo fail[ed] to make a full and complete disclosure consistent with the above, he w[ould] be subject to a contempt sanction of $100 per day until he . . . complied." (*Id.*)

On April 24, 2026, Paatalo filed a "Declaration of Compliance with Subpoena and Court Orders," averring that he had disclosed and accounted for "the approximately 6,143 Gmail emails referenced in [his] February 23, 2026 disclosure." (Doc. 35 at 6 (referring to Doc. 17-2).) That Declaration further clarified that, after the Court's April 20 2026 Order, Paatalo disclosed an additional 406 communications involving Gary Koeppel. (*Id.*) Because Defendants have not raised any further issues with the Court, it is assumed that, after six months and four court orders, Paatalo has finally and fully responded to the October 23, 2025 document subpoena.

## B.    Adequate Excuse

Because Defendants have shown that Paatalo violated at least one of this Court's explicit disclosure directives, the burden shifts to Paatalo to show an "adequate excuse" for his noncompliance. Fed. R. Civ. P. 45(g). He has failed to

do so. Paatalo argues that his conduct should be excused because he is not subject to sanctions under Rule 37 of the Federal Rules of Civil Procedure, he is not an attorney, he is a nonparty, Defendants slept on their rights, and he acted in good faith to comply with all of this Court's orders. None of these excuses is adequate. First, as outlined above, Paatalo is subject to potential sanctions under Rule 45(g), not Rule 37. Second, while Paatalo is not an attorney, the record reflects that he has been consistently involved in litigation—involving both himself and third parties—across numerous jurisdictions for over a decade. He has been the pro se plaintiff in at least three cases in the District of Montana alone. *See Paatalo v. J.P. Morgan Chase Bank*, 1:10-cv-119-CSO (closed June 28, 2012); *Paatalo v. First Am. Title Co. of Mont., Inc.*, 1:13-cv-128-SEH (closed Apr. 29, 2015); *Paatalo v. Everest Funding*, 9:25-cv-216-KLD (pending). He is therefore more familiar with the Federal Rules of Civil Procedure than the average pro se litigant. Third, Rule 45 does indeed attempt to protect nonparties from onerous or unnecessary discovery. *See Ent. Studios Networks, Inc. v. McDonalds USA, LLC*, 2025 WL 1090394, at *18 (C.D. Cal. Apr. 9, 2025); Fed. R. Civ. P. 45(c) advisory committee's note to 1991 Amendment. But those protections must be properly invoked. As explained above, Paatalo failed to respond or otherwise object to the document subpoena as required by Rule 45. Accordingly, he cannot avail himself of those protections now.

10

Fourth, Paatalo argues that Defendants should not be rewarded for failing to file their motion to compel until after he initiated the litigation over their subpoenas in this Court. To be sure, had Paatalo timely objected to the document subpoena under Rule 45, he would not be "obligated to produce the subpoenaed documents, or even search for them, until [Defendants] obtained an order directing compliance." *Pennwalt Corp.*, 708 F.2d at 494. But Paatalo did not timely object to the document subpoena. As a result, regardless of the reason Defendants waited until this point to seek to compel Paatalo's compliance, that delay does not absolve Paatalo of his obligation to produce the requested documents. Nor does this argument provide any excuse for Paatalo's failure to fully produce the requested information after this Court ordered such disclosure.

Finally, Paatalo maintains that his obstructive conduct fell short of being directly noncompliant with either the Rules or this Court's orders. Indeed, Paatalo insists that he "has not withheld materials based on unilateral determinations." (Doc. 34 at 5.) His position is belied by the record outlined above. Paatalo further argues that the "numerical disparity" between the emails identified in his February 23, 2026 disclosure and those disclosed to Defendants "does not establish noncompliance" as it does not account for "the actual content of what was produced." (*Id.* at 6.) But this argument just reaffirms Paatalo's fundamental misunderstanding of his disclosure obligations in this case. The October 23, 2025 document subpoena directed Paatalo to identify and disclose those documents and

11

correspondence in his possession that fell within specific categories. (*See* Doc. 3-5.) Paatalo did so, identifying 6,153 emails that he labelled as "[p]rivileged litigation communications, [p]rotected work product, [c]onfidential proprietary business communications, or [p]urely personal and non-responsive communications." (Doc. 17-2 at 2.) *Consistent with his own disclosure*, Paatalo was then required to disclose those 6,153 emails. Neither Defendants nor this Court arbitrarily selected a disclosure amount or threshold for Paatalo; he did that himself. Paatalo appears to see no problem with his identification of over 6,000 emails and his subsequent disclosure of less than 1,000. No matter the reason for that discrepancy—whether Paatalo miscalculated the number of communications in the first instance or could not recreate his email search parameters—Paatalo was required to disclose all the emails he had identified. He failed to do so. Instead, Paatalo subsequently and unilaterally curated his disclosure. Paatalo's consistent noncompliance and obstruction qualifies as gamesmanship, not good faith or an adequate excuse.

## C.    Conclusion

Based on the foregoing, Paatalo is found in contempt under Rule 45(g). He is therefore ordered to pay Defendants' attorney fees and costs associated with their motion to compel, (*see* Doc. 15), as outlined below.

## II.    Amount Awarded

Defendants have submitted affidavits requesting $3.15 in costs and a total of $17,613.50 in fees:

|  | Hours | Rate | Total |
|---|---|---|---|
| Long & Levitt LLP |  |  |  |
| Jessica MacGregor | 2.6 | $300 | $780.00 |
| Abigail Henderson | 21.5 | $250 | $5,375.00 |
| Garlington |  |  |  |
| Gunnar Boose | 39.3 | $250 | $9,825.00 |
| Peter Stokstad | .5 | $280 | $140.00 |
| Paralegals | 10.3 | $145 | $1,493.50 |
| **TOTAL** |  |  | **$17,613.50** |

(*See* Docs. 27, 28.) For the reasons stated below, Defendants' request for $3.15 in costs is granted and attorney fees are awarded in the amount of $14,698.50.

When calculating a reasonable award of attorney fees, the first step is to calculate the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The "court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434. Unreasonably expended hours include hours that are "excessive, redundant, or otherwise unnecessary." *Id.* Here, the hourly rates charged by all defense counsel are reasonable and reflective of civil attorney rates in the District of Montana. The requested amount is reduced, however, based on the nature of the work performed.

13

Fees are not awarded for billing associated with Paatalo's deposition,[1] basic supervisory work, or Koeppel's putative intervention or privilege log. The fee calculation is therefore as follows:

| | Hours | Rate | Total |
|---|---|---|---|
| Long & Levitt LLP | | | |
| Jessica MacGregor | 0.6 | $300 | $180.00 |
| Abigail Henderson | 13.6 | $250 | $3,400.00 |
| Garlington | | | |
| Gunnar Boose | 38.5 | $250 | $9,625.00 |
| Peter Stokstad | 0 | $280 | $0.00 |
| Paralegals | 10.3 | $145 | $1,493.50 |
| **TOTAL** | | | **$14,698.50** |

## III.    Conclusion

Based on the foregoing, IT IS ORDERED that Paatalo is found in contempt. On or before July 1, 2026, Paatalo must pay Defendants a total of $14,701.65 for attorney fees and costs.

---

[1] In their motion to compel, Defendants note that while Paatalo attended a deposition following this Court's order in February 2026, he was obstructive throughout, refusing to respond to questions and repeatedly invoking privilege when refusing to answer questions. (*See* Doc. 16.) The transcript of Paatalo's deposition shows that he does not accurately understand the concept of "privilege" or "work product" in this context. (*See, e.g.*, Doc. 17-1 at 17 (Paatalo claiming privileged correspondence with Koeppel in 2012 prior to any litigation or Koeppel hiring counsel); *id.* at 34–35 (describing discussions regarding the mortgage investigation work he performed for Koeppel from 2012 to 2015 as "work product privilege" despite the fact counsel had not yet been hired); *id.* at 43 (claiming "work product" for any work he performed for Koeppel outside the timeframe Defendants represented Koeppel).) Despite that noncompliance, Defendants did not seek to compel Paatalo to sit for another deposition or seek contempt for his obstructive conduct. Thus, while Paatalo's deposition conduct is further evidence of his uncooperativeness, it is not an independent basis for the contempt finding.

14

DATED this 4ᵗʰ day of May, 2026.

_____  13:42 P.M.
Donald W. Molloy, District Judge
United States District Court