William J. Paatalo –
Non-Party Witness
476 LaBrie Drive
Whitefish, MT 59937
(406) 309-1812
Bill.bpia@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| In re Subpoena to:<br><br>WILLIAM PAATALO,<br>Non-Party Movant. | Case No. 9:26-MC-00001-KLD<br><br>**AFFIDAVIT OF WILLIAM J. PAATALO IN SUPPORT OF NON-PARTY'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL FORENSIC EXAMINATION** |

**COUNTY OF FLATHEAD** )
)ss
**STATE OF MONTANA** )

**BEFORE ME** this day personally appeared William J. Paatalo, who, being first duly sworn and taking an oath, hereby certify as follows:

1. I am over the age of eighteen and competent to testify to the matters stated herein. I have personal knowledge of the facts set forth below.
2. I submit this affidavit for the limited purpose of clarifying and correcting factual assertions made in Defendants' filings concerning alleged AMGAR business activities, alleged joint ventures involving Gary Koeppel and myself, and references to "RexNet."
3. Throughout the ongoing discovery disputes in this matter, Defendants have repeatedly asserted that responsive communications and documents concerning an alleged AMGAR-related business enterprise between Gary Koeppel and myself are being withheld or concealed. This affidavit and the attached exhibits are submitted to clarify the factual record concerning those assertions and to demonstrate that the underlying documents do not support the narrative advanced by Defendants.
4. There has never existed any registered "AMGAR" related business entity, partnership, corporation, limited liability company, or other commercial enterprise jointly operated between Gary Koeppel and myself.
5. The AMGAR-related communications at issue began in approximately June 2023 and involved discussion and evaluation of litigation-related strategies associated with concepts advanced by Florida attorney Neil Garfield, Esq. (now deceased).

6. Neil Garfield was a licensed attorney who represented AMGAR as his own concept and strategy. In the communications attached hereto as **Exhibit A,** Mr. Garfield expressly referred to AMGAR as "my invention for which I claim intellectual rights and control," and further referenced "my organization" and "the plan I devised."
7. The Garfield communications referenced herein were outside the scope of the subpoena that is the subject of the present discovery dispute and are being disclosed solely for purposes of clarifying the factual record concerning Defendants' AMGAR-related allegations.
8. The attached communications further reflect that attorney Steven Wilker participated in or was copied on certain AMGAR-related discussions and conference communications concerning the Koeppel matter.
9. The communications reflect attorney strategy discussions and consultation regarding litigation theories, tender concepts, litigation structure, and related issues involving the Koeppel matter.
10. My role in these communications was limited to facilitating and participating in discussions among litigation participants and counsel regarding possible litigation strategies. I was not operating an AMGAR business enterprise with Gary Koeppel.

11. The attached exhibits reflect that the AMGAR concepts and materials originated from Neil Garfield and entities associated with him, including references to "GTC Honors." Those materials were not created by me and did not constitute a jointly operated business venture between Gary Koeppel and myself.

12. Attached as **Exhibit B** are true and correct copies of AMGAR-related business-plan and offering materials associated with Neil Garfield and/or entities related to him, including references to GTC Honors.

13. Defendants' filings also reference "RexNet" and "Robert Steele" (deceased) in a manner suggesting association with AMGAR. Based upon my understanding, RexNet LLC was a separate and unrelated concept involving cryptocurrency and real-estate technology matters between Gary Koeppel and Robert Steele.

14. Attached as **Exhibit C** is a true and correct copy of Nevada Secretary of State business registration information reflecting RexNet LLC registration records identifying Robert W. Steele and Gary M. Koeppel as managers as early as October 9, 2018.

15. I was not a partner in the RexNet venture between Gary Koeppel and Robert Steele and did not operate RexNet as an AMGAR business enterprise.

16. Attached hereto as **Exhibit D** is a true and correct copy of a May 26, 2023 email from Gary Koeppel to the undersigned titled "RexNet Pitch Deck," together with the attached RexNet presentation materials transmitted with that email.

17. In the May 26, 2023 email, Mr. Koeppel requested the undersigned's "impression" concerning the attached RexNet materials.

18. The attached RexNet presentation materials reflect concepts and proposals relating to cryptocurrency, blockchain, digital-asset, and related technology-business concepts involving RexNet and associated participants.

19. The May 26, 2023 RexNet materials predate the June 2023 AMGAR-related strategy discussions involving attorney Neil Garfield and further demonstrate that RexNet and the AMGAR strategy discussions were separate and unrelated subjects.

20. The RexNet pitch-deck materials do not identify RexNet as an AMGAR entity, foreclosure-tender enterprise, or AMGAR sales operation jointly operated by the undersigned and Gary Koeppel.

21. The undersigned further notes that the May 26, 2023 RexNet email and attached pitch-deck materials were included within prior productions provided to Defendants.

22. On or about June 5, 2023, an email was circulated confirming a conference call concerning the "AMGAR Strategy – Koeppel Case" involving attorney Neil Garfield, attorney Steven Wilker, attorney Paul Balmer, Gary Koeppel, the undersigned, John Schleining, and others. (**Exhibit A**).

23. The June 5, 2023 email specifically identified the meeting subject as "AMGAR Strategy – Koeppel Case" and reflected that the communications were centered around litigation strategy discussions relating to Mr. Koeppel's mortgage litigation matter.

24. On June 7, 2023, prior to the conference call, the undersigned circulated an outline identifying anticipated discussion topics for attorney Neil Garfield and the participants on the call. The outline discussed mortgage-litigation issues, chain-of-title issues, related factual disputes, and questions concerning the AMGAR strategy that attorney Garfield had previously utilized in certain California matters.

25. The June 7, 2023 outline further reflects that the participants were discussing litigation strategy concepts concerning Mr. Koeppel's pending mortgage-related disputes, including tender concepts, creditor-identification issues, and potential litigation outcomes.

26. On June 9, 2023, attorney Neil Garfield transmitted to the undersigned an email titled "confidential source materials, attorney client privileged,

proprietary," together with multiple AMGAR-related attachments and explanatory materials.

27. Those materials expressly identified AMGAR concepts, structures, offering documents, proposed agreements, and business-plan materials associated with entities and individuals other than the undersigned and Gary Koeppel, including references to GTC Honors, Inc., proposed investors, proposed stakeholders, and other third parties.

28. Neither the undersigned nor Gary Koeppel were identified as officers, owners, incorporators, or operators of any AMGAR entity identified within the attached materials.

29. On June 19, 2023, the undersigned emailed attorney Neil Garfield indicating that John Schleining, who had participated in the prior strategy discussions, appeared willing to provide financial backing for the discussed litigation strategy if California counsel familiar with the AMGAR strategy were involved.

30. That communication further demonstrates that the discussions at issue concerned exploration of litigation-related strategies associated with Mr. Koeppel's mortgage matter and not an ongoing jointly operated AMGAR business enterprise between the undersigned and Gary Koeppel.

31.The undersigned further states under oath that the undersigned's role in these communications was limited to coordinating discussions, reviewing strategy concepts, facilitating communications among participants, and discussing potential litigation approaches relating to Mr. Koeppel's mortgage litigation matters with licensed attorneys.

32.The attached exhibits further demonstrate that attorney Steven Wilker was aware from the outset that the communications at issue involved litigation-strategy discussions associated with attorney Neil Garfield's proprietary strategy, and not an undisclosed AMGAR commercial enterprise jointly operated between Gary Koeppel and the undersigned.

33.The undersigned has reviewed statements submitted by Defendants characterizing the undersigned and Gary Koeppel as allegedly operating an "AMGAR" business enterprise through RexNet. For example, in the Parties' Joint Report filed May 4, 2026 in the California proceedings, Defendants stated:

> "*We know Mr. Koeppel is in a mortgage/real estate/AMGAR tender business with Mr. Paatalo called Rexnet. We now know another participant in this business is named Robert Steele.*"

34.A true and correct copy of the relevant filing excerpt is attached hereto as **Exhibit E.**

35.Defendants further represented in the current filing:

*"Although it is well known Mr. Paatalo and Mr. Koeppel are involved in a business called Rexnet which apparently has a business plan to sell AMGAR, Mr. Paatalo produced only two documents related to this enterprise."*

36. The undersigned respectfully states under oath that those characterizations materially misstate the nature of the communications and relationships reflected in the underlying documents.

37. The undersigned further states under oath that at no time throughout these proceedings has the undersigned willfully disobeyed any Court order or intentionally acted in bad faith with respect to the discovery issues addressed herein.

38. Throughout this dispute, the undersigned repeatedly attempted to comply with evolving discovery directives, explain the structure of Gmail-thread search results, supplement productions, provide accounting summaries, and clarify misunderstandings concerning broad Gmail-search-result populations and categorical disclosures.

39. The undersigned has also previously disclosed to the Court that the undersigned is presently involved as a plaintiff in separate litigation against certain Defendants and/or related parties in Multnomah County, Oregon, involving unrelated claims. (Paatalo v. Tonkon Torp, et. al., Case No.: 25-CV-37188.)

40. The undersigned respectfully submits that the escalating accusations of misconduct, concealment, contempt, and bad faith asserted throughout the present discovery proceedings have had substantial professional, financial, and personal consequences.

41. The undersigned has worked for many years as a licensed private investigator and has previously served in law enforcement-related capacities. The undersigned has spent more than 23- years working in the mortgage, foreclosure, title, and investigative fields and has attempted throughout these proceedings to maintain professional integrity while responding to extensive and increasingly invasive discovery demands as a non-party witness.

42. The undersigned further respectfully submits that the burdens imposed by the present dispute have substantially impacted the undersigned's business operations, professional reputation, financial resources, and family life, including responsibilities associated with supporting and raising a family.

43. I am providing the attached materials solely for the limited purpose of correcting and clarifying the factual record concerning the nature of these communications and relationships. This disclosure is not intended as a general waiver of any attorney-client privilege, work-product protection, confidentiality interest, or objection previously asserted.

**Further affiant sayeth not.**

By: ________________
William Paatalo

SWORN TO AND SUBSCRIBED before me on this 13th day of May 2026 by William Paatalo, who produced the following identification: Montana State Drivers License and who took an oath.

________________
My commission expires: 10/19/27     Notary Public – State of Montana

SARA FREEMAN
Notary Public for the
State of Montana
Residing at WHITEFISH, MT
My Commission Expires
October 19, 2027