**From:** Gunnar O. Boose
**Sent:** Wednesday, May 27, 2026 3:07 PM
**To:** Bill Paatalo
**Subject:** RE: [EXTERNAL] Re: Meeting Follow-up

Bill,

The exclusionary terms we discussed were to exclude items relating to your own malpractice action, not the additional broad categories which you are now referencing. I will note your request to add those exclusionary search terms, but we will not agree to including each of them, especially in light of how broad the terms themselves and your stated purpose for the terms.

Best,
Gunnar

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Wednesday, May 27, 2026 3:01 PM
**To:** Gunnar O. Boose <goboose@GARLINGTON.COM>
**Subject:** Re: [EXTERNAL] Re: Meeting Follow-up

**This Message originated outside your organization.**

Gunnar,

Thank you for the update. I appreciate your willingness to continue working through both the protective-order language and the timing issues, and I agree that we are likely getting much closer.

With respect to your question regarding yesterday's discussions and my concerns about the search terms, I think there may still be some misunderstanding regarding the nature of my concern.

I understand your position that yesterday we spent significant time discussing section 4.e and the need for additional exclusionary terms relating to my own malpractice litigation and unrelated matters. That remains true.

However, what I was also attempting to demonstrate during our discussions — and what I believe the Court also recognized during the hearing — is that many of the operative standalone search terms themselves are extraordinarily broad when applied across approximately fifteen years of professional and investigative materials.

For example, yesterday I specifically attempted to demonstrate that simply running the standalone term "MERS" across even a single year of materials generated well over 1,600 hits. Extrapolated over the broader time period implicated here, that potentially results in tens of thousands of responsive populations from that single standalone term alone. The same issue exists with broader terms such as:

- “Mortgage Electronic Registration Systems”;
- “Foreclosure”;
- “Tender”;
- “Quiet Title”;
- “Investor”;
- “RexNet”;
- and similar broad ecosystem-wide terminology.

That is the core concern I have been attempting to articulate.

My concern is not necessarily the existence of the terms themselves. Rather, my concern is that when those terms are used as completely standalone terms — untethered from contextual narrowing, litigation-specific limitations, proximity restrictions, or pairing with Koeppel-related identifiers — they effectively sweep in massive portions of my broader professional ecosystem having no actual nexus to the operative malpractice allegations.

And I think where we may still fundamentally disagree is this: your position appears to be that the solution is simply that Defendants are willing to undertake the burden of reviewing and sifting through those enormous search populations yourselves. But respectfully, that does not actually narrow the resulting search universe itself.

The issue is not merely the amount of time Defendants are willing to spend reviewing materials. The issue is that there still must be some practical limiting principle or articulable nexus tethering these extraordinarily broad search populations to the operative issues in the litigation.

I understand your position — and the Court’s comments — that because objections were deemed waived, I do not get to unilaterally determine what is or is not “relevant” or “responsive.” I recognize that issue.

At the same time, however, I still believe the Court clearly recognized during the hearing that the breadth of these standalone terms creates a legitimate overbreadth problem requiring some form of narrowing, safeguards, or limiting structure. Otherwise, terms such as:

- “MERS”;
- “Tender”;
- “Foreclosure”;
- “Quiet Title”;
- or “Investor”
  effectively capture large portions of my entire professional and investigative ecosystem accumulated over many years.

Further, when you state that my proposed limitations are “too narrow” because they would only capture items explicitly naming Koeppel, I think there may still be some misunderstanding as to what I am proposing. My proposal is not that every document must literally contain the standalone word “Koeppel.” My proposal is that broad ecosystem-wide terms such as:

- “MERS”;
- “Foreclosure”;
- “Tender”;
- “Quiet Title”;
- “RexNet”;

- or “Investor”
  be contextually paired or tethered in some fashion to Koeppel-related identifiers, operative litigation concepts, or proximity limitations so that the resulting search populations maintain some articulable nexus to the underlying claims.

For example:

- “MERS” AND “Koeppel”;
- “Tender” within X words of “Gary”;
- “RexNet” within X words of “Koeppel”;
- or similar contextual structures.

Otherwise, those terms standing entirely alone simply capture enormous portions of my broader professional ecosystem accumulated over many years.

At this point, it appears Defendants’ position is largely centered on Requests 7–9 of the subpoena — particularly Request No. 8 regarding “all documents relating to the Koeppels” — as the basis for maintaining extremely broad standalone search terms without substantial contextual limitations.

But that is also precisely the problem I have been attempting to articulate. If Request No. 8 is interpreted in such an expansive manner that:

- there are effectively no meaningful temporal limitations;
- no meaningful contextual limitations;
- no meaningful nexus limitations;
- and any broad standalone term touching any aspect of my broader mortgage or investigative work is swept into the review universe,
  then I am struggling to understand how the search universe could ever realistically be narrowed in any meaningful way consistent with the Court’s directive that the parties work toward “reasonable limitations” and “potential safeguards.”

In other words, if every broad standalone term is justified under Request No. 8 simply because Gary Koeppel and I have had communications and professional interactions over many years, then it would seem almost impossible to meaningfully narrow the search universe at all without implementing some form of:

- contextual pairing;
- Boolean limitation;
- proximity restriction;
- operative timeframe limitation;
- or exclusionary structure.

That is why I continue to believe that the only meaningful way to reasonably narrow the search universe is through some combination of:

- contextual pairing;
- Boolean limitations;
- proximity restrictions;
- operative timeframe limitations;
- and exclusionary terms.

Otherwise, simply adding or subtracting isolated standalone terms does not materially address the core issue because the resulting populations remain extraordinarily broad.

That is also why I simultaneously emphasized the need for robust protective safeguards if the resulting search universe remains broad notwithstanding those concerns.

At this point, I am candidly not sure whether we are ultimately going to fully resolve the scope issue itself because we may simply disagree fundamentally regarding how much narrowing is required before these searches become reasonably tailored.

Nevertheless, I remain willing to continue working cooperatively toward:

- additional exclusionary terms;
- additional safeguards;
- reasonable protocol limitations;
- and protective-order language
  to try to narrow the remaining disputes as much as possible.

As for section 4.e specifically, below are additional proposed exclusionary terms intended to avoid sweeping in unrelated litigation matters, unrelated Oregon rescission litigation, unrelated client investigations, and unrelated professional repositories:

Proposed Additional Exclusionary Terms for Section 4.e:

- "Multnomah"
- "Tonkon"
- "Tonkon Torp"
- "Wilker"
- "Balmer"
- "Aiken"
- "Jesinoski"
- "ORCP"
- "ORS 86.797"
- "TILA"
- "Rescission Notice"
- "Everest"
- "Griffin"
- "Shellpoint"
- "NewRez"
- "SLS"
- "FDIC"
- "ASC 860"
- "Derecognition"
- "Entitlement Holder"
- "UCC 2-609"
- "Administrative Notice"
- "Administrative Default"
- "1099-A"
- "1099-B"
- "1099-C"
- "1096"

- “Quiet Title Package”
- “SPV”
- “RHI”
- “Cook Islands”
- “Investor Deck”
- “Token”
- “Patent”
- “Nevada”
- “Series LLC”

These are intended to address and exclude materials relating to:

- the Multnomah County malpractice litigation;
- unrelated Oregon rescission matters;
- unrelated professional investigations;
- unrelated client matters;
- unrelated business structuring materials;
- and unrelated professional methodologies and work product.

Finally, regarding timing, I appreciate your willingness to entertain a short extension regarding the actual forensic implementation itself. I understand the Court’s concerns regarding Rule 1 and speedy resolution.

At the moment, I am simply requesting a reasonable short extension regarding the actual implementation and turnover process itself in light of:

- my previously disclosed family obligations;
- the ongoing protocol/protective-order negotiations;
- and the fact that the parties are still actively working through the scope and safeguards issues.

I appreciate your continued cooperation and professionalism while we work through these issues.

Bill Paatalo

On Wed, May 27, 2026 at 2:35 PM Gunnar O. Boose <goboose@garlington.com> wrote:

> Bill,
>
> Thank you for the additions to the protective order. I think we are close. I will have some redlines for you shortly.
>
> Regarding the search terms, you stated yesterday that the only section which you had issues with was section 4.e, and that we would add exclusionary search terms to prevent items related to your own malpractice action. Now you are stating that the other search terms are too broad, even with the strict

protective order. Which is it? Your proposed search limitations are too narrow. Most of your proposals would only capture items which explicitly name Koeppel, which is not what the subpoena required.

If we are agreeing to much of your "Attorneys' Eyes Only" language in the protective order, as well as general "Confidential" designation for all of the items, is that acceptable? It seems like the strict protective order guidelines address your request for "robust protective safeguards."

Please provide me with the exclusionary terms for section 4.e that you agreed to provide so I can add those to the list of items which will not be produced to us, pending agreement on your proposed terms.

I understand that you have some family obligations coming up. However, I don't believe that you will need to be extremely involved in the forensic examination itself, save providing your devices and some information to the expert for login purposes. How long of an extension on the examination itself are you requesting? The Court previously ordered you to provide your information and devices within 5 days, and I don't believe that a long delay would be in keeping with the Court's admonishment to all parties regarding Rule 1's requirements of a just and speedy resolution. If we are able to reach a stipulated agreement in time for us to meet our filing deadline I am willing to entertain a short extension, although that will ultimately be up to the Court to decide.

Best,

Gunnar

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Wednesday, May 27, 2026 1:54 PM
**To:** Gunnar O. Boose <goboose@GARLINGTON.COM>
**Subject:** Re: [EXTERNAL] Re: Meeting Follow-up

**This Message originated outside your organization.**

---

Gunnar,

Attached please find my proposed additions and language revisions to the draft Stipulated Protective Order for your review. To clarify, I did not prepare formal "redlines" to the document itself, but

instead inserted and revised language in red font reflecting the additional protections and clarifications I am requesting.

I also want to address your statement that I am misrepresenting our discussions regarding search-term modifications.

My concern has never been whether Defendants are willing to discuss modifications generally. My concern has specifically been that many of the proposed "modifications" discussed thus far have not meaningfully narrowed the operative search universe itself through contextual pairing, litigation-specific limitations, Boolean narrowing, or proximity restrictions tied directly to the operative Koeppel litigation issues.

For example, during our discussions yesterday, I repeatedly raised concerns that many of the currently proposed standalone search terms — as individual terms by themselves — would sweep in extraordinarily broad categories of unrelated professional, investigative, business, and litigation materials accumulated over many years.

My understanding from those discussions was that Defendants continued to maintain the position that many of the operative search terms should remain searchable as standalone terms and that Defendants would broadly review the resulting populations and independently determine responsiveness from those materials.

Accordingly, to further clarify what I have been attempting to propose, below are examples of the type of narrowing mechanisms and contextual limitations I have repeatedly been referring to:

Examples of Contextual / Boolean Narrowing Proposals

Instead of:

- "MERS"

Potential narrowing examples:

- "MERS" AND "Koeppel"
- "MERS" within 25 words of "Koeppel"
- "MERS" AND ("Gary Koeppel" OR "Emma Koeppel")

Instead of:

- "Quiet Title"

Potential narrowing examples:

- "Quiet Title" AND "Koeppel"
- "Quiet Title" within 20 words of "Koeppel"
- "Quiet Title" AND ("Wilker" OR "Tonkon")

Instead of:

- "Tender"

Potential narrowing examples:

- “Tender” AND “Koeppel”
- “Tender” within 20 words of “Koeppel”
- “Tender” AND (“underlying litigation” OR “Wilker”)

Instead of:

- “RexNet”

Potential narrowing examples:

- “RexNet” AND “Koeppel”
- “RexNet” within 20 words of “Gary”
- “RexNet” limited to the operative timeframe

Instead of:

- “Investor”

Potential narrowing examples:

- “Investor” AND “Koeppel”
- “Investor” within 20 words of “RexNet”
- “Investor” AND operative timeframe limitations

Instead of:

- “Foreclosure”

Potential narrowing examples:

- “Foreclosure” AND “Koeppel”
- “Foreclosure” within 20 words of “Wilker”
- “Foreclosure” AND operative litigation terms

My concern has consistently been that absent this type of contextual narrowing, many of the current standalone terms will inevitably sweep in:

- unrelated litigation matters;
- unrelated client investigations;
- unrelated mortgage matters;
- unrelated business planning;
- and broader professional ecosystem materials having no actual nexus to the operative malpractice allegations.

That is the precise reason why I have simultaneously emphasized the need for correspondingly robust protective safeguards. If the resulting search universe remains extremely broad, then the safeguards necessarily become even more important under the Court’s directive that the parties work toward “reasonable limitations” and “potential safeguards.”

Separately, I also wanted to follow up regarding timing.

I understand and respect the Court's requirement that the parties submit their proposal today. I am not requesting an extension of that filing deadline.

However, I previously raised a separate concern regarding the actual timing of any forensic implementation or examination itself, particularly in light of:

- my previously disclosed family obligations surrounding my son's graduation and related commitments over the coming days;
- the absence of any currently pending trial date;
- the possibility of ongoing resolution discussions in the underlying litigation;
- and the substantial amount of work still required to finalize the protocol and protective-order issues.

I do not believe I have yet received a response as to whether Defendants object to a brief and reasonable extension regarding the timing of any actual forensic implementation itself, assuming such implementation ultimately proceeds after the Court reviews the parties' submissions.

Please let me know your position on that issue as well.

Again, I appreciate your continued cooperation and professionalism while we work through these issues under significant time pressure.

Bill

On Wed, May 27, 2026 at 1:17 PM Gunnar O. Boose <goboose@garlington.com> wrote:

> Bill,
>
> You are misrepresenting our conversations. We are absolutely willing to agree to search term modifications. I have requested your proposals and have yet to receive them. I offered to go line by line on the search terms and how we could limit them, and you chose to instead agree upon a broad protective order covering the documents, with some additional exclusionary terms. This is the third time that I have asked you for those terms, which you are refusing to provide.
>
> If you are not willing to agree to provide the search terms and the precise language you are requesting to add to the protective order I will be required to provide notice to the Court of our failure to reduce the agreement we had reached yesterday to writing.
>
> In response to your numbered responses:

1. Please provide a draft provision for the additional categorization.
2. We cannot agree to provide identification of all individuals. We can agree to a provision requiring outside vendors to execute a confidentiality agreement.
3. It is not my "position" that the current draft contains language limiting use to the Underlying Litigation. It is in the draft. Please review the draft and provide suggested redlines.
4. Again, the draft limits use of the information to the Underlying Litigation. Please review the draft and provide suggested redlines.
5. I don't see any suggestion or request here. Please review the draft and provide suggested redlines.
6. You are misrepresenting our position. You agreed to keep the search broad in favor of a broad protective order. I am still open to your limiting search terms, which, again, you have not provided.
7. Please provide a suggested redline.
8. This issue would be resolved with additional exclusionary search terms, which I have asked you to provide.
9. Thank you for agreeing to provide proposed language. Please do provide it.

Our deadline is quickly approaching. I remain hopeful that we can submit a joint report, but your apparent use of generative AI and misrepresenting our conversations is not helpful. While I await your suggestions, I will prepare a notice of Defendants proposed revised protocol and protective order. I will provide that for your review.

Best,

Gunnar

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Wednesday, May 27, 2026 12:11 PM
**To:** Gunnar O. Boose <goboose@GARLINGTON.COM>
**Subject:** Re: [EXTERNAL] Re: Meeting Follow-up

**This Message originated outside your organization.**

---

Gunnar,

After further reviewing both the Court's Order and our discussions yesterday, I think the core issue separating the parties has become much clearer.

As the Court expressly stated:

> "it would benefit both the parties and the Court if the parties could agree to some reasonable limitations on, and potential safeguards for, the ordered forensic evaluation."

At the same time, I fully understand the Court's statement that this process is not intended to relitigate previously waived objections to the subpoena. I am not attempting to do that. I recognize the Court has ordered that a forensic evaluation will proceed in some form.

However, based on our discussions, it appears Defendants' position remains essentially that:

- Defendants are entitled to review everything captured by the proposed search universe;
- Defendants will determine responsiveness;
- and Defendants are unwilling to materially narrow the search architecture through contextual pairing, litigation-specific limitations, meaningful Boolean restrictions, or substantial subject-matter narrowing.

In practical terms, that means the resulting search universe may sweep in extraordinarily large amounts of:

- unrelated professional work product;
- unrelated litigation materials;
- unrelated mortgage investigations;
- unrelated client information;
- proprietary investigative methodologies;
- litigation strategy frameworks;
- business planning materials;
- and broader professional ecosystem information accumulated over many years.

Accordingly, if Defendants' position is that the search and review universe itself will remain extremely broad, then the only meaningful protection remaining available to address the Court's concern regarding "reasonable limitations" and "potential safeguards" is the implementation of a substantially more robust protective structure governing:

- dissemination;
- access;
- derivative use;
- retention;
- confidentiality;
- and downstream handling of the resulting information.

In other words, the broader the review universe becomes, the stronger the safeguards necessarily must become.

My concern is not merely ordinary confidentiality. My concern is the irreversible exposure of proprietary methodologies, strategic frameworks, investigative approaches, nonparty client information, and professional work product to individuals and entities operating within the same mortgage, servicing, foreclosure, and securitization industries against which I work professionally as an investigator and consultant.

Once broad categories of information are reviewed and absorbed, the issue is no longer simply whether documents are later destroyed. The concern becomes:

- institutional knowledge;
- derivative strategic use;
- migration of methodologies;
- and dissemination beyond the immediate needs of this litigation.

That is precisely why I have continued requesting:

- stronger Attorneys' Eyes Only protections;
- tighter dissemination controls;
- limitations on derivative use;
- stronger handling restrictions for unrelated materials;
- and clearer continuing jurisdiction and enforcement language.

To be clear, I am not attempting to obstruct compliance with the Court's Order. Rather, I am attempting to address the exact concern identified by the Court itself — namely, the need for "reasonable limitations" and "potential safeguards" in light of the breadth and sensitivity of the information potentially implicated by this forensic process.

If Defendants are unwilling to substantially narrow the scope of the search architecture itself, then I believe it becomes even more important that the resulting protective safeguards be correspondingly strengthened to account for the breadth of information likely to be captured.

With respect to the specific areas you addressed in your response:

1. Attorneys' Eyes Only Designation

I appreciate your willingness to potentially agree to an additional designation. I am agreeable to a process whereby I identify specific documents or categories of documents subject to an enhanced designation within a reasonable period after disclosure, subject to Defendants' right to challenge such designations if necessary.

My concern is simply that the current generalized "Confidential" designation does not adequately protect highly sensitive materials involving:

- investigative methodologies;
- proprietary strategy frameworks;
- unrelated client information;
- nonpublic business planning;
- and broader professional work product developed over many years.

2. Scope of Individuals Permitted Access

I understand your position that the litigation team may require flexibility regarding vendors, consultants, experts, and support personnel. My concern is not legitimate litigation functionality, but rather unrestricted dissemination to a broad and undefined group of individuals operating within overlapping industry sectors.

At minimum, I believe it is reasonable that:

- outside vendors and consultants be specifically identified;
- all recipients execute confidentiality acknowledgments;
- and dissemination remain limited to those reasonably necessary to the litigation.

3. Use Limited to This Litigation

I understand your position that the current draft already contains language limiting use to the underlying litigation. My concern is that generalized language may not sufficiently address indirect or derivative use of methodologies, strategic concepts, investigative frameworks, or institutional knowledge learned through the forensic process.

I am not attempting to prevent legitimate litigation use within this matter. My concern is preventing unrelated downstream use outside the scope of this litigation.

4. Verbal Dissemination Concerns

I understand that counsel and experts necessarily must discuss materials for purposes of the litigation itself. My concern is not legitimate litigation communications, but rather dissemination outside the reasonable needs of this case, including informal strategic sharing or transmission of methodologies and investigative approaches into unrelated matters.

I am certainly willing to narrow the language to permit communications reasonably necessary to this litigation while still protecting against broader dissemination outside the litigation context.

5. Industry-Specific Concerns

Again, my concern here arises from the unique overlap between:

- my professional investigative work;
- the mortgage and securitization industries;
- and the industries and entities regularly represented by counsel involved in this matter.

Given the breadth of the proposed search universe, I believe these concerns are legitimate and directly tied to the Court's instruction that the parties work toward reasonable safeguards.

6. Protocol Versus Protective Order

I agree that many operational issues involving:

- search architecture;
- extraction procedures;
- search implementation;
- custody;
- and return populations

belong within the protocol itself.

However, because Defendants' position appears to be that the review universe will remain extremely broad and that Defendants will determine responsiveness from the resulting materials, the strength of the protective safeguards becomes correspondingly more important.

7. Retention of Derivative Materials

I understand your position regarding ethical obligations to retain litigation files and attorney work product. My concern is less about ordinary litigation retention obligations and more about indefinite retention or future use of:

- extracted databases;
- analytical compilations;
- strategic summaries;
- investigative mappings;
- or derivative materials unrelated to the operative litigation issues.

Perhaps we can work toward narrower language reasonably balancing those concerns.

8. Clawback / Quarantine Procedures

I respectfully disagree that all protections concerning unrelated materials have necessarily been waived simply because objections to the subpoena were deemed waived.

My concern here involves:

- unrelated clients;
- unrelated litigation matters;
- unrelated business activities;
- privileged third-party information;
- and professionally sensitive materials having no actual nexus to the operative malpractice allegations.

Given the breadth of the proposed search universe and the Court's recognition that reasonable safeguards remain appropriate, I believe some form of quarantine or handling procedure for clearly unrelated sensitive materials remains both reasonable and necessary.

9. Continuing Jurisdiction

I will propose language addressing continuing jurisdiction for enforcement of the protective order obligations following the conclusion of the litigation.

Again, I appreciate your willingness to continue working through these issues professionally and cooperatively. I believe the concerns raised above are directly responsive to the Court's instruction that the parties work toward reasonable limitations and safeguards in connection with this unusually broad forensic process.

Thank you again.

Bill

On Wed, May 27, 2026 at 11:29 AM Gunnar O. Boose <goboose@garlington.com> wrote:

> Bill,

Are you able to add redlines to the document? As to your specific items below:

1. Would this be a separate designation than the confidential designation applicable generally? We could potentially agree to an additional designation, but it would be dependent on you identifying the specific documents over which you are claiming this designation within a reasonable time period after the documents are disclosed (say 10 days) and subject to our right to object to such designation. We can't leave anything up to the discretion of another individual, as we discussed yesterday.
2. Without knowing what the specific documents are, we can't know in advance who will need to review the documents. We are amendable to stricter protection language which you can suggest, subject to my approval. However, the language already states that all confidential information will be used for the underlying litigation only.
3. The language of the draft protective order already states that all confidential information will be used only for the underlying litigation.
4. We can't agree to this as proposed. We need to be able to discuss what is in the confidential information for the purposes of the underlying litigation.
5. The language of the draft protective order already states that all confidential information will be used only for the underlying litigation.
6. This would be addressed in the protocol, not the protective order. The protocol already talks about the search terms and custody of ESI, including that only the items which are returned as the results of the search terms would be provided to us by the expert.
7. We can't agree to this as proposed. The attorneys need to retain our files pursuant to our ethical and other obligations.
8. There won't be a need for clawback procedures, as the protections you mentioned have already been waived.
9. Please provide a proposed provision addressing this.

Best,

Gunnar

---

**From:** Bill Paatalo <bill.bpia@gmail.com>
**Sent:** Wednesday, May 27, 2026 11:08 AM
**To:** Gunnar O. Boose <goboose@GARLINGTON.COM>
**Subject:** [EXTERNAL] Re: Meeting Follow-up

**This Message originated outside your organization.**

---

Gunnar,

After reviewing the current draft more carefully, I do have several additional concerns and proposed revisions that I believe are necessary given the unique nature of the information potentially implicated by any forensic process in this matter.

My concerns are not limited simply to public dissemination of documents. Rather, my primary concern involves the irreversible exposure of proprietary investigative methodologies, litigation strategies, tradecraft, nonparty client information, and professional work product developed over many years in connection with my mortgage, securitization, and investigative work. Once individuals are exposed to those methodologies and strategic frameworks, the damage cannot realistically be undone merely through later destruction of documents.

As you know, the law firms and industry participants involved in this litigation regularly represent and/or operate within the same banking, mortgage servicing, securitization, and foreclosure industries against which I work professionally as an investigator and consultant. Accordingly, I believe substantially stronger protections are necessary before any forensic process could proceed.

In particular, I would request consideration of the following additional protections and revisions:

1. Addition of a "Highly Confidential – Attorneys' Eyes Only" designation applicable to:

    - investigative methodologies;
    - litigation strategy materials;
    - proprietary business information;
    - nonparty client information;
    - unrelated investigative materials;
    - and sensitive work product/tradecraft.

2. Limitation of access to any "Attorneys' Eyes Only" materials to specifically identified individuals only, rather than broad categories of:

    - consultants;
    - litigation vendors;
    - document managers;
    - support personnel;
    - or other outside contractors.

3. A prohibition against any use — direct or indirect — of information obtained through the forensic process in:

    - any other litigation;
    - any mortgage servicing or securitization matter;
    - any business activity;
    - any consulting activity;
    - or any strategic planning outside this litigation.

4. Express language prohibiting recipients from verbally disclosing, discussing, summarizing, characterizing, teaching, or otherwise communicating methodologies, strategies, or information learned from the materials, even after the underlying documents are destroyed.
5. Express language prohibiting the use of any information or knowledge derived from the forensic materials in connection with representation of:

- mortgage servicers;
- securitization entities;
- trustees;
- banks;
- or related financial industry participants in any other matter.

6. Restrictions limiting any forensic process to:

    - targeted extraction;
    - agreed-upon search terms;
    - agreed-upon timeframes;
    - agreed-upon custodians;
    - and agreed-upon subject matter limitations,
    rather than unrestricted access or broad imaging/review of unrelated ESI.

7. Destruction requirements extending not only to original documents, but also to:

    - notes;
    - summaries;
    - extracted metadata;
    - databases;
    - analytics;
    - derivative work product;
    - issue maps;
    - and any internally generated summaries or strategic analyses derived from the materials.

8. Clawback and quarantine procedures for inadvertently captured:

    - unrelated client materials;
    - unrelated investigations;
    - privileged information;
    - and nonresponsive personal or business information.

9. Continuing jurisdiction language expressly providing that the Court retains jurisdiction to enforce confidentiality and non-use obligations even after conclusion or dismissal of the litigation.

I am not attempting to obstruct reasonable protections or narrowly tailored discovery efforts. However, given the nature of my profession and the overlap between the parties involved in this litigation and the broader mortgage/servicing industry, I believe substantially more robust protections are necessary before any forensic process could move forward.

Please let me know your thoughts, and I am certainly willing to continue working cooperatively toward language that reasonably protects all parties involved.

Thank you again.

Bill

On Wed, May 27, 2026 at 9:39 AM Gunnar O. Boose <goboose@garlington.com> wrote:

Good morning Bill,

I've attached a draft stipulated protective order for the items to be produced pursuant to the forensic examination. Please let me know if the terms are acceptable and we will get a finalized copy to you to execute. If you had any changes you would like to make, please "redline" them in so we can discuss.

Have you made any progress on the additional exclusionary terms for the proposed protocol?

Best,

Gunnar

---

**From:** Gunnar O. Boose
**Sent:** Tuesday, May 26, 2026 2:19 PM
**To:** Bill Paatalo <bill.bpia@gmail.com>
**Subject:** Meeting Follow-up

Bill,

Thank you for meeting with me this morning. To recap our agreement, I've outlined the immediate next steps for each of us below.

- You will be providing us with some additional targeted exclusionary search terms to exclude items related to your own malpractice action. One of the exclusionary terms is Jake Adams (jake@lotzlawfim.com and jake@oxbridgelaw.net), an attorney you have consulted with about the matter. We will agree to certain additional targeted terms that you will provide.
- The remaining search terms from our initial proposed protocol will remain unchanged.
- We will agree on a broad protective order. I'm going to start drafting the base of it now, and you will add in terms which you would request to include. We will provide redlines to your proposed terms and we will each endeavor to have a final agreement on the terms of the protective order and joint proposed protocol by noon on Wednesday, May 27.

Best,

Gunnar

Gunnar O. Boose // Attorney

Garlington, Lohn & Robinson, PLLP
P: 406-523-2572  E: goboose@garlington.com
A: P.O. Box 7909 Missoula, MT 59807

A Professional Limited Liability Partnership

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CONFIDENTIALITY:** The information contained in this e-mail message may be privileged and may contain confidential information intended only for the use of the individual or entity named above. If you have received this communication in error, please notify us immediately by e-mail or telephone and delete the original message from your computer.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law. If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law. If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:

476 LaBrie Drive

Whitefish, MT 59937

Office: 1-(888)-582-0961 (Old - No longer in service)

1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:

https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:

https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."

Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law. If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*

--

Bill Paatalo
Oregon Private Investigator - PSID#49411

BP Investigative Agency, LLC
Mailing Address:
476 LaBrie Drive
Whitefish, MT 59937
Office: 1-(888)-582-0961 (Old - No longer in service)
1-406-309-1812 (New)

bill.bpia@gmail.com

www.bpinvestigativeagency.com

To place an order, click here:
https://bpia.wufoo.com/forms/rngxg4h1ugzdoj/

Client Administrative Notice Tracking Form:
https://bpia.wufoo.com/forms/r1lvfyrl1eyq9wn/

"Nobody should be allowed to invent a debt and then enforce it."
Neil Garfield, Esq.

*Any use of the confidential information contained in this email by anyone other than the intended recipient is prohibited by law. If received in error, please notify sender by reply email or call 1-406-309-1812 and then please delete this email. Thank you.*